SIPES v. MICHIGAN CENTRAL RAILROAD CO.

1. DEATH—FEDERAL EMPLOYERS' LIABILITY ACT—BASIS FOR MEASURING LOSS TO WIDOW AND CHILD.

The pecuniary loss of a widow and child recoverable under the Federal employers' liability act for the death of the husband and father, in the absence of evidence showing a reasonable prospect of larger earnings by the deceased, had he lived, should be based upon the known earnings and contributions of deceased, with the exception that the pecuniary loss to the child may go beyond consideration of food, shelter, clothing, etc., and include the expense of supplying such degree of nurture, and intellectual, moral, and physical training that deceased was, by reason of ability, character, and temperament capable of giving.[1]

2. SAME—MERE PARENTAGE NO EVIDENCE OF CHILD'S LOSS.

Mere parentage does not show the child's loss, but it must be measured by the capacity of the parent to bestow, and, in the absence of evidence on this subject, there was error in permitting the jury to assess damages for such loss.[2]

3. SAME—EVIDENCE—POSSIBILITY OF WIDOW'S REMARRIAGE SHOULD BE CONSIDERED.

The possibility of the 21-year-old widow, with a life expectancy of 39 years, remarrying should have been submitted to the jury on the question of her loss of support.[3]

4. SAME—LOSS TO WIDOW AND CHILD COULD NOT APPROXIMATE DECEASED'S EARNINGS.

The pecuniary loss to the widow and child, in no event, could approximate the earnings of deceased, for the expense of his own needs would have to be met from his earnings.[4]

5. SAME—EXCESSIVE VERDICT.

A verdict of $15,166.66 to the widow and child, held, excessive, in view of the fact that said sum would yield, at five per cent. interest, an annual income approximating

[1]Death, 17 C. J. §§ 198, 210; [2]Id., 17 C. J. §§ 237, 258; [3]Id., 17 C. J. § 183; [4]Id., 17 C. J. § 232.
On elements of pecuniary loss within Federal employers' liability act, see notes in 47 L. R. A. (N. S.) 80; 48 L. R. A. (N. S.) 988; L. R. A. 1915C, 85.
On excessiveness of damages in actions for personal injuries resulting in death, see note in L. R. A. 1916C, 820.

deceased's average yearly earnings, and leave the sum awarded intact at the end of the widow's life expectancy.[5]

6. SAME—INCREASE OF EXPENSE AFTER DECEASED'S DEATH MAY NOT BE SHOWN.

Evidence of the purchase of an intended home on contract upon which $40 had been paid was admissible for the purpose of showing that so much of decedent's earnings had been devoted to the joint advantage of himself and wife, but not to show increase of expense after his death, where the proofs showed that the expenses previous to his death could not be met out of his earnings.[6]

7. SAME—STATE OF HEALTH OF WIDOW AND CHILD SHOULD HAVE BEEN SHOWN.

Evidence disclosing the state of health of the widow and child should have been introduced in order that the jury might determine the life expectancy of the widow and whether the child would probably live to reach the age of 21 years.[7]

Error to Jackson; Williams (Benjamin), J. Submitted May 2, 1925. (Docket No. 137.) Decided June 18, 1925.

Case by Flossie C. Sipes, administratrix of the estate of Floyd R. Good, deceased, against the Michigan Central Railroad Company for the negligent killing of plaintiff's decedent. Judgment for plaintiff. Defendant brings error. Reversed.

*Cobb, Bisbee & Wilson* (*Frank E. Robson* and *J. W. Dohany*, of counsel), for appellant.

*Bresnahan & Groefsema* and *Davis & Michel*, for appellee.

WIEST, J. Floyd R. Good, aged 24, was a brakeman in the employ of defendant and, December 22, 1922, a locomotive boiler exploded and killed him. He left a wife, to whom he had been married 19 months,

[5]Death, 17 C. J. §§ 198, 235; [6]Id., 17 C. J. §§ 238, 253; [7]Id., 17 C. J. § 254.

and a female child, 6 months of age.   This suit was brought under the Federal employers' liability act to recover for the widow and the child their pecuniary loss occasioned by his death.   Liability is conceded by defendant.   The jury awarded $15,166.66 compensation.   Defendant reviews by writ of error.   The errors relied on relate to requested instructions, the charge of the court and the claim that the verdict is excessive.   From the time of his marriage to the day of his death, a period of 19 months, decedent earned $1,204.65, an average of $760.80 per year, or $63.40 per month.   His employment by defendant extended over a period of 72 days and was somewhat irregular.   From the date of his marriage he and his family lived with his wife's parents, and for board and room he agreed to pay $22 per week, but at the time of his death he was indebted for such board and room some $300 or $400 and owed also a doctor's bill of $50.

Defendant's requests to charge bring before us the question of whether the jury should have been instructed that, in the absence of evidence tending to show a reasonable prospect of larger earnings by the deceased, had he lived, they should base their findings of pecuniary loss to the widow and child upon his known earnings and contributions and not upon a mere speculative supposition of increase in earnings under problematical future opportunities.   With the modification we shall point out respecting the child, we think the issue should have been so circumscribed. See *Richmond, etc., R. Co.* v. *Elliott*, 149 U. S. 266 (13 Sup. Ct. 837).   The pecuniary loss to an infant, in the death of a parent, may go beyond consideration of food, shelter, clothing and like material comforts, and include the expense of supplying such degree of nurture, and intellectual, moral and physical training, as the evidence shows such parent was, by reason

of ability, character and temperament capable of giving. Mere parentage however does not carry such a showing. Evidence relating to the nurture bestowed and revealing the intellectual powers and moral character of the person is available and must be introduced to show the extent of what would have been supplied by the deceased had he lived, and, by reason of his death, need now be bought and paid for. To measure what has been lost, it is necessary to consider the capacity of the parent to bestow. Without such light the jury would have to apply their own standards based on their individual experiences, and these would, of necessity, "be as various as their tastes, habits and opinions." See *Michigan Cent. R. Co.* v. *Vreeland*, 227 U. S. 59 (33 Sup. Ct. 192, Ann. Cas. 1914C, 176). And the result would therefore be reached without considering the parent at all. The evidence falls short on this subject and there was error in permitting the jury to assess damages for such a loss.

The widow was 21 years of age at the time of the trial and defendant requested the court to instruct the jury to consider, in fixing the period of loss of support, the possibility of her remarriage. This was covered by the tenth request and was not given, nor the substance thereof included in the charge. The possibility of so young a person contracting another marriage should have been permitted to temper the thought of celibacy for 39 years. *Jones* v. *McMillan*, 129 Mich. 86.

It is difficult from this record to determine the amount of pecuniary aid actually given by decedent to his wife and child. We are informed of his earnings and his inability to support his wife and child without going in debt. This is not a suit to recover the loss to decedent's estate of his prospective earnings, but only to recover the pecuniary loss sustained by his widow and child. Such loss, in no event,

could approximate his earnings, for the expense of his own needs would have to be met along with the needs of his family: Considering the disclosed earnings of decedent, and the absence of evidence showing good reason for an increase in earning power, we think the verdict excessive. The amount awarded would yield an income, if placed at interest at five per cent., of $758.33 per annum, come within $3 of decedent's average yearly earnings, and at the end of 39 years the sum awarded would still be intact. In *Chesapeake & Ohio R. Co.* v. *Gainey,* 241 U. S. 495 (36 Sup. Ct. 633), the widow had verdict for $16,000, and it was insisted that the award, if placed at interest, would yield an annual income greater than the amount the widow would have received, and yet leave her the principal to dispose of at her death. It was held such a result is not permissible.

The purchase of an intended home on contract, and upon which $40 had been paid, had no legitimate purpose beyond showing that so much of decedent's earnings had been devoted to the joint advantage of himself and wife. Increase in expenses after decedent's death could not measure the support lost, for plaintiff's proofs established the fact that expenses previous to his death could not be met out of his earnings. Evidence disclosing the state of health of the widow and child should have been introduced in order that the jury might determine the life expectancy of the widow and whether the child would probably live to reach the age of 21 years.

For the errors pointed out, the judgment is reversed and a new trial granted, with costs to defendant.

McDONALD, C. J., and CLARK, BIRD, SHARPE, STEERE, and FELLOWS, JJ., concurred. MOORE, J., concurred in the result.