FLYNN *v.* KRAMER.

1. STATUTES—AUTOMOBILES—SERVICE OF PROCESS ON NONRESIDENT
OPERATORS.

> Statute providing for substituted service of process against
> nonresident operators of automobiles, being in derogation of
> common right, must be strictly construed and cannot be ex-
> tended by implication to include persons not coming within
> its terms (1 Comp. Laws 1929, § 4790).

2. SAME—CONSTRUCTION OF TERM "OPERATE"—SUBSTITUTED SERV-
ICE.

> Within meaning of act providing for substituted service of
> process against nonresident operators of automobiles, the
> word "operate" is construed to signify "a personal act in
> working mechanism of the car" (1 Comp. Laws 1929, § 4790).

3. PLEADING—JURISDICTION—WAIVER — GENERAL APPEARANCE — MO-
TION TO QUASH.

> Filing of a general appearance and cross-declaration, after
> denial of motion to quash service of process, does not waive
> right to object to jurisdiction (Court Rule No. 18 [1933]).

4. AUTOMOBILES—NONRESIDENT OWNER — STATUTES — SUBSTITUTED
SERVICE.

> Nonresident owner of automobile who was not driving, nor a
> passenger in, his own car involved in an accident, but a
> passenger in another car following at some distance, *held,* not
> an operator within meaning of act providing for substituted
> service of process against nonresident operators of motor
> vehicles (1 Comp. Laws 1929, § 4790).

5. NEGLIGENCE—TEST OF ORDINARY CARE.

> What one does or fails to do as related to the circumstances
> under which he acts is test as to whether ordinary care has
> been used.

6. AUTOMOBILES—COASTING—STATUTES—GEARS IN NEUTRAL.

> In automobile accident case, testimony that plaintiff motorist
> took his foot off accelerator and "coasted" *held,* not to show

he drove his car in violation of 1 Comp. Laws 1929, § 4721, in the absence of showing that gears of his car were in neutral, hence, he was not guilty of contributory negligence on that ground.

7. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Issue of contributory negligence based on failure of plaintiff motorist, traveling on 20-foot pavement, to apply emergency brake when he saw two cars approaching from opposite direction somewhat on his side of highway or turn onto gravel shoulder which he regarded as unsafe *held*, a matter for consideration by jury.

·8. NEGLIGENCE—SUDDEN EMERGENCY.

The law makes allowance for acts done in an emergency and in sudden peril and for lack of coolness of judgment incident thereto.

9. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

Alleged improper arguments made to jury with relation to special questions in automobile accident case are not reviewable where not called to the attention of the trial court at the time.

10. TRIAL—ARGUMENT OF COUNSEL.

Claim that plaintiff argued upon the question of damages for the first time in rebuttal and, therefore, gave defendant no opportunity to reply, *held*, without merit, where in plaintiff's opening argument he claimed ''judgment sufficient to compensate him for his injuries.''

11. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

In action by plaintiff against two defendants question of causation raised by defendant against whom case was dismissed for lack of jurisdiction but not presented by appeal of other defendant is not considered.

12. DAMAGES—PERSONAL INJURIES—EARNING CAPACITY.

In action against two defendants by plaintiff who suffered loss of an eye, disfigurement, impairment of mental processes and left leg, and pain and suffering as result of automobile accident, verdict and judgment of $25,000 against both defendants is conditionally reduced to $10,000 where case is dismissed as to one defendant for lack of jurisdiction and plaintiff's earning capacity is apparently unimpaired.

POTTER, J., concurring in reduction to $12,500.

Appeal from Berrien; White (Charles E.), J. Submitted January 22, 1935. (Docket No. 102, Calendar No. 38,199.) Decided May 17, 1935.

Case by Jeremiah Flynn against Raymond Kramer and Paul Bernstein for personal injuries sustained in an automobile accident. Verdict and judgment for plaintiff. Defendants appeal. Reversed as to defendant Kramer. Modified and affirmed as to defendant Bernstein.

*Elizabeth H. Forhan* and *Charles W. Gore,* for plaintiff.

*Mason, Alexander, McCaslin & Cholette,* for defendant Kramer.

*Charles W. Stratton* and *L. H. Vogel* (*Kerr, Lacey & Scroggie,* of counsel), for defendant Bernstein.

BUSHNELL, J. This action arose out of a collision between three automobiles which occurred on US–31 some distance north of Benton Harbor on July 23, 1933. It had been raining that day and at the time of the accident, 7 p. m., the pavement was still wet in spots, but the weather had cleared; it was still daylight and the visibility was good. The highway is 40 feet wide and has a 20-foot concrete pavement with gravel shoulders on either side, the west towards Lake Michigan being protected by a guardrail of posts and heavy wire situated about 18 feet from the edge of the concrete. The roadway at the scene of the accident is level and straight, rising to a hill at the north where the road curves to the east. There is a hill to the south and a curve in the road to the east.

From the disputed testimony it would seem that Flynn, coming from the south, saw a number of cars approaching from the north, and he claims that although he was entirely on his own side of the road, the first car, Bernstein's, was over the center line, and the second car, Kramer's, being driven by Kovarsky, appeared to be trying to pass Bernstein. Flynn, relying on both cars resuming their side of the road, maintained his course until he realized that he was in danger, when he took his foot off the accelerator and moved farther to the right. The shoulder of the road was, in his judgment, not sufficiently safe for travel. Bernstein, however, claims Flynn was over the center line and (Bernstein) swerved further towards his right to avoid the collision. It is not too clear how these two cars collided. Bernstein claims he was struck by the front of Flynn's car, while Flynn claims Bernstein's left rear wheel struck the left rear part of his car. Flynn was thrown across the road to the west where Kramer's car then struck Flynn's, tipping it over. Kramer claims his car was completely off the road when it was struck by Flynn.

After the accident Bernstein's car was on the east side of the road, headed north, with its wheels locked and left rear fender, wheel and housing smashed, but no occupant seriously injured. Flynn's car was on its side, wheels to the south; its front, headed northwesterly; rear was partly on the pavement; its gas tank was knocked loose and struck the car traveling behind that of Kramer's. The Kramer car was against the west guardrail and both it and the Flynn car were completely demolished. Kovarsky and Mrs. Kramer died shortly after the accident. Flynn's son, who was riding on his running board unknown to Flynn, was killed outright, and

Flynn's frontal bones were crushed, his right eye knocked out and knee cap smashed. Other passengers in Flynn's car were injured but they are not in this case except as witnesses.

The confused testimony may be accounted for by the fact that everyone's attention was centered on the injured and dying rather than the details of the collision.

Flynn sued Bernstein and Kramer jointly, the latter filing a cross-declaration after denial of his motion to dismiss on the grounds of improper service. The jury in returning a verdict for Flynn for $25,000 as against both defendants, answered two questions with special findings to the effect that neither Bernstein's nor Kramer's cars were entirely west of the center of the highway at the time and place of the actual impact.

The first matter requiring our attention is Kramer's question as to service of process, he being a non-resident of the State. Section 4790, 1 Comp. Laws 1929, authorizes service upon the secretary of State in certain instances. The question was before us in *Brown* v. *Cleveland Tractor Co.*, 265 Mich. 475, a discussion of which is found in 13 Michigan Bar Journal (May, 1934), 194. See also, "Process in actions against non-resident motorists," 32 Michigan Law Review (January, 1934), 325, 336.

Our legislature has not seen fit to amend the act in question, as did the New York legislature following the decision in *O'Tier* v. *Sell*, 252 N. Y. 400 (169 N. E. 624).* We can only repeat:

"The statute is in derogation of common right, must be strictly construed, and cannot be extended by implication to include persons not coming within

* But see Act No. 110, Pub. Acts 1935, effective May 28, 1935, which amends 1 Comp. Laws 1929, §§ 4790, 4791.—REPORTER.

its terms. * * * The word 'operate' signifies 'a personal act in working the mechanism of the car.' " *Brown* v. *Cleveland Tractor Co., supra,* 478.

We did not decide the *Brown Case* until December 19, 1933, and we note the opinion which denied Kramer's motion to quash service was filed December 8, 1933, and we assume the trial court did not have the benefit of our views at that time. Nevertheless, we cannot extend the language of the statute; that function must be left to the wisdom of the legislative branch of government. The filing of a general appearance and cross-declaration, after denial of a motion to quash, does not waive the right to object to jurisdiction. Court Rule No. 18 (1933).

Kramer was not driving his car, at the time of the accident, but was a passenger in another which followed a considerable distance in the rear. He was not an eyewitness to the collision but arrived shortly thereafter. The situation thus presented is controlled by the *Brown Case, supra,* and the cause must be dismissed as to defendant Kramer.

Was plaintiff guilty of contributory negligence? The general use of automobiles and the multitudinous situations which arise out of the daily operation of a tremendous number of cars on the streets and highways of the State, with their attending accidents, simple and serious, in the opinion of the writer, forces the conclusion that it is an impossibility to lay down precise rules by which we may measure all acts of contributory negligence. *Izzo* v. *Weiss,* 270 Mich. 372. Some cases must, of necessity, stand or fall on their own facts. What one does or fails to do as relates to the circumstances under which he acts is the test to be applied. *Brebner* v. *Sidney Hill Health System, Inc.,* 269 Mich. 541. Flynn said:

"I don't know whether I applied my brakes or not, and I did not turn to the right. I did not make any sharp turn to the right but I bore to the right more than I was before. I was to the east of the black line and to the west of the edge of the concrete when I first saw these cars, and when those cars were coming toward me, I bore more to the right than I was before."

He did not turn out on the gravel because he was not satisfied that some parts of it were safe. He did testify, "I took off my foot and coasted," but we cannot say this was a violation of 1 Comp. Laws 1929, § 4721, in the absence of testimony showing the gears of his vehicle "in neutral." A careful examination of the testimony does not indicate that Flynn's failure to use his emergency brake or any other act of omission or commission on his part contributed to the accident as a matter of law. As said by Mr. Justice NORTH:

"Even if it is a fact that it may be possible, after the accident, to point out how it might have been avoided by plaintiff, under the circumstances of this case, this does not of necessity charge him with contributory negligence  *  *  *  and the circuit judge was correct in holding that the question of the plaintiff's contributory negligence presented an issue of fact for the jury." *Tregonning* v. *Castantini,* 243 Mich. 233, 237.

"The law makes allowance for acts done in an emergency and in sudden peril and for lack of coolness of judgment incident thereto." *Myler* v. *Bentley,* 226 Mich. 384 (23 N. C. C. A. 859).

The contradicted facts in the case at bar were for the determination of the jury even in the light of the testimony of disinterested witnesses. The testimony is not of such a nature that we may ignore the findings of the jury.

It is urged that appellee's counsel made improper arguments to the jury with relation to the special questions; ''but because it was not called to the attention of the trial court at the time, it is not here for review.'' *Sima* v. *Wright*, 268 Mich. 352.

It is claimed that plaintiff argued for the first time in rebuttal upon the question of damages, to which defendant had no opportunity to reply. Plaintiff's opening argument contains the following:

''But having weighed this testimony and the testimony of the witnesses upon both sides if you are convinced of the righteousness of that cause of Jerry Flynn and that you deem it your sworn duty under these facts and the law we expect you will render a judgment sufficient to compensate him for his injuries.''

Defendant Bernstein's appeal does not present the question of intervening cause discussed by Mr. Justice WIEST in *Frye* v. *City of Detroit*, 256 Mich. 466, and we do not consider matters not raised in the briefs.

Both defendants, however, claim the verdict of $25,000 is excessive. Plaintiff lost his right eye; his left frontal bone is crushed, which it is claimed will, or already had, impaired his mental processes; his left knee cap is gone, with a resulting impairment of use of that leg; he is permanently disfigured and has had much pain and suffering. In *Palmer* v. *Security Trust Co.*, 242 Mich. 163 (60 A. L. R. 1392), Mr. Justice WIEST quoted from *Stone* v. *Sinclair Refining Co.*, 230 Mich. 472, as to the difficulty attending the measuring of a money consideration for pain and suffering. What he there said as to no two cases being alike is applicable here. He also said:

''We have repeatedly found occasion to determine verdicts excessive, and, when possible to do so, we

have required a remittitur of the excess or the alternative of a new trial."

We are obliged to order a dismissal as to defendant Kramer, and leave defendant Bernstein to bear the burden alone. Plaintiff was 51 years old at the time of his injury and was employed by the city of Chicago as a hoisting engineer, at a salary of $55 a week. He was laid up and away from work about two and a half months, and is still employed by the city on an easier job at the same pay. That he has been fortunate enough to remain in the same employ since 1909 does not lessen his injury or suffering, but it should affect the question of damages. The amount of $25,000 at 5 per cent. will produce $1,250 per year and still leave the principal intact. His earning capacity is apparently unimpaired.

Unless plaintiff shall file a remittitur in 30 days from the filing of this opinion of all damages in excess of $10,000, and interest from the date of judgment, the judgment below will stand reversed and a new trial with costs to appellant will be granted. In case the remittitur is filed, the judgment of $10,000 and interest will stand affirmed, with costs to appellee as to the trial below. In either event both appellants will recover their costs in this court.

Nelson Sharpe, North, Fead, Wiest, Butzel, and Edward M. Sharpe, JJ., concurred with Bushnell, J.

Potter, C. J. I concur, except I think the damages should be reduced only to $12,500.